In accordance with the directives of the North Carolina Court of Appeals, the undersigned find as facts and conclude as matters of law the following, which were entered into by the parties, with the exception of defendant "Singer Sewing Machine Company Ltd., a subsidiary of Singer Company N.V.," in an executed Pre-Trial Agreement dated 18 July 1994, and at the hearing before the Deputy Commissioner, as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. After leaving Plant #1, the plaintiff was employed until 14 March 1990 at the Joyce Complex in Lenoir, North Carolina.
3. Plaintiff was employed from April of 1948 until 1966 by Kent-Coffey Manufacturing Company.
4. Kent-Coffey Manufacturing Company merged into Consolidated Furniture Industries, Inc. on 23 December 1966.
5. Consolidated Furniture Industries, Inc. changed its name to Magnavox Furniture, Inc. on 27 January 1970.
6. Plaintiff was employed by Consolidated Furniture Industries, Inc. and Magnavox Furniture, Inc. from 23 December 1966 until 15 March 1973.
7. Consolidated Furniture Industries, Inc. and Magnavox Furniture, Inc. were subsidiary corporations during this period of Baker, Knapp and Tubbs, Inc. of Kohler, Wisconsin except for one brief period from October to December 1972 when they were subsidiary corporations of Knapp and Tubbs, Inc. of Chicago, Illinois.
8. According to the title documents, the Singer Company purchased Plant #1 on 15 March 1973. According to plaintiff's Social Security Earnings Record, he continued to receive compensation [wages] from Magnavox Furniture, Inc. during the first quarter of 1973.
9. According to the Social Security Earnings Record, plaintiff received compensation [wages] from "The Singer Company and Affiliated Domestic Corporations" (8 Stamford Forum, Stamford, Ct.), from April, 1973 through 1987, except for two brief periods — October to December, 1974, and January to March 1977 — when the records show that he received his pay from "Singer Sewing Machine Company". Defendants do not stipulate that the "Singer Company" was his employer, or that the "Singer Company" paid plaintiff.
10. According to the record chain of title, "The Singer Company" sold Plant #1 to "Singer Furniture Company" on 30 July 1986. According to plaintiff's Social Security Earnings record, however, "Singer Company and Affiliated Domestic Corporations" continued to pay plaintiff during the last quarter of 1987.
11. Plaintiff worked for and received compensation [wages] from "Singer Furniture Company" (one of the two divisions of "SSMC, Inc."), from 1 January 1988 until he had to stop working on 14 March 1990.
12. Travelers Insurance Company provided workers' compensation coverage for Magnavox Company from 1 July 1971 to 1 July 1973.
13. Liberty Mutual Insurance Company provided workers' compensation coverage for Singer Company and Affiliated Domestic Corporations from 1 January 1974 to 31 December 1979.
14. Northwestern National Insurance Company provided workers' compensation coverage for Singer Company and Affiliated Domestic Corporations from 1 January 1980 to 21 December 1985.
15. National Union Fire Insurance Company answered Interrogatories dated 7 January 1993 in which it stated that it provided workers' compensation coverage for Singer Sewing Machine Company from 1 January 1986 to 1 July 1987. Based upon information received since Interrogatories were answered, National Union Fire Insurance Company amends that answer to show that it provided workers' compensation coverage for SSMC, Inc. from 1 January 1986 through 30 June 1987.
16. Constitution State Service Company provided claim service from 1 July 1987 to 30 June 1988 for the self-insured SSMC, Inc. (8 Stamford Forum, Stamford, Ct.), [although State records show that "SSMC, Inc." never qualified as a self-insurer in this State, as required by N.C. Gen. Stat. § 97-93].
17. American Mutual Liability Insurance Company provided workers' compensation coverage for Kent Coffey Manufacturing Company and/or Consolidated Furniture Industries, Inc. from 1 July 1966 to 1 July 1969 and for Magnavox Furniture, Inc. from 1 July 1970 to 1 July 1971.
18. Medical records from Dr. N. M. Lewis, Caldwell Family Physicians, P.A., Caldwell Memorial Hospital, Dr. Robert A. Rostand, including the North Carolina Industrial Commission Advisory Medical Committee report of 6 February 1991, Dr. James F. Donohue, The University of North Carolina Hospital, Chapel Hill, North Carolina, and Dr. Charles P. Scheil; the Form 18; Social Security Administration records of plaintiff; Land and Building Title records concerning Plant #1; and defendant National Union Fire Insurance Company's response to plaintiff's request for admissions, are received into evidence.
 *********** EVIDENTIARY RULING
The "Limited Asbestos Survey and CERCLA File Review" report dated December 1994 is admitted into evidence for the purpose of determining plaintiff's exposure to asbestos.
 ***********
In accordance with the directives of the North Carolina Court of Appeals, and based upon all of the competent, credible and convincing evidence of record, the Full Commission makes the following
 FINDINGS OF FACT
1. Plaintiff was born on 25 July 1929. Plaintiff went to the fifth grade in school, but is unable to read or write.
2. From 1945 to 14 March 1990, plaintiff was employed on a full-time basis by defendant Kent-Coffey Manufacturing, furniture manufacturers, and its successors in interest.
3. From 1945 to 13 September 1987, plaintiff worked in Plant #1, in Lenoir, N.C. an 18 acre complex under one roof which produced furniture. Production at Plant #1 ceased in 1984 while the plant was owned by "The Singer Company and Affiliated Domestic Corporations", which used the address 8 Stamford Forum, Stamford, Ct.
4. From 13 September 1987 to 14 March 1990, plaintiff worked in the Joyce Complex, Plant No. 53, a group of several furniture manufacturing plants and a central warehouse owned by the "Singer Furniture Company".
5. From 1948 until the winter of 1986-87, and from 13 September 1987 until 14 March 1990, plaintiff worked in the maintenance departments of these plants, performing plant and production machine maintenance.
6. Plaintiff's maintenance duties during the years he worked in Plant #1, until the winter of 1986-87, included maintaining two boilers, including annual boiler shut-downs, inspections and cleanings; and maintaining the steam lines, air lines and the sprinkler system, which all ran together along the ceiling of the plant.
7. The doors of the boilers and the steam lines were insulated. The insulation contained asbestos. A "Limited Asbestos Survey" was conducted at the plant on October 18, 1994 to determine if asbestos-containing materials might be present. The materials sampled included several different thermal system insulation materials, such as air cell pipe insulation, fitting insulation, and six other types of pipe insulation. All of the thermal system insulation samples were found to contain asbestos, several of which contained both chrysotile and amosite asbestos fibers at up to 30 percent by weight. The amosite fibers are typically considered more hazardous than the chrysotile fibers since amosite is relatively resistant to soaking, either with plain or amended water (water that has been treated with a surfactant).
8. Particularly in the 1950's and 1960's, and throughout the period of time plaintiff worked in Plant #1, plaintiff installed and removed insulation as part of his maintenance duties. The insulation came in rolls. Plaintiff cut the insulation to size and fitted it to the boiler doors and steam line pipes. Plaintiff also used a hammer to beat insulation into a powder and mixed the powder with glue to form a paste which would be installed on elbow joints on steam line pipes. When repairing steam line pipes, plaintiff removed insulation by breaking it off of the pipes with a hammer or cutting it off of the pipes with a saw. Plaintiff frequently was exposed to, and breathed, insulation dust while installing and removing insulation, and while working on the air lines and sprinkler system which ran alongside the insulated steam pipes. These activities exposed him to the hazards of asbestos. Plaintiff did not wear a protective mask during these activities.
9. After production ceased at Plant #1 in 1984, plaintiff continued to work at the plant until it was sold in September of 1987. During this time, some product shipping activities occurred, and production machinery was prepared for auction sale. The plant remained heated through the winter of 1986-1987. Plaintiff maintained one boiler and the steam line system until on or about 31 January 1987. Thereafter, plaintiff's duties consisted mainly of providing building security. During the period of time from the date production ceased until the sale of the plant, insulation on the steam pipes was deteriorating, breaking off the pipes and falling on the floor. Plaintiff was exposed to insulation dust on a regular basis throughout this period.
10. During December 1986 and January 1987, the insulated pipes froze, and thereafter, the heat was not turned on. Plaintiff ceased the insulation maintenance tasks, but continued to walk through the plant daily as a watchman.
11. There is insufficient evidence of record from which to prove by the greater weight that plaintiff's exposure to insulation dust after 31 January 1987 and until his transfer to another plant on 13 September 1987 augmented his occupational diseases to any extent, however slight.
12. On 13 September 1987, plaintiff transferred to Plant #53 in the Joyce Complex. Plaintiff remained at the Joyce Complex until 14 March 1990. Plaintiff has not earned wages since 14 March 1990.
13. All asbestos-containing material at the Joyce Complex Plant No. 53 was encapsulated, and there is no medical evidence that plaintiff was injuriously exposed to the hazards of asbestosis in that facility.
14. Plaintiff never wore protective masks or gear while working with, or around, asbestos-containing insulation.
15. In February of 1987, plaintiff sought medical treatment from Dr. Lewis, his family physician, for symptoms of increasing shortness of breath over the preceding two years.
16. In March of 1988, plaintiff was hospitalized and treated for colon carcinoma and increased blood pressure.
17. In August of 1988, plaintiff provided Dr. Lewis with a history of dyspnea upon exertion which had gradually worsened over the previous ten years, and of smoking two packs of cigarettes per day for 30 years, ending approximately 1971. Dr. Lewis determined that plaintiff had chronic obstructive pulmonary disease and referred plaintiff to Dr. Donohue, a pulmonologist, at U.N.C. Hospital.
18. On 1 September 1988, plaintiff was seen by Dr. Donohue for progressively worsening shortness of breath. At that time, plaintiff had chronic obstructive pulmonary disease with severe ventilatory impairment, and pleural plaques. Plaintiff's pulmonary function tests indicated a significant obstructive impairment of his lungs and a mild restrictive impairment of his lungs.
19. In March of 1989, plaintiff was hospitalized for chest pains, and treated with cardiac angioplasty.
20. On 14 March 1990, plaintiff ceased working as a watchman due to development of lung diseases which produced shortness of breath, difficult breathing, coughing and daily sputum.
21. Since 14 March 1990, plaintiff has had difficulty with shortness of breath and the ability to perform exertional activity. Plaintiff has not had the capacity to work or earn wages in any employment since 14 March 1990.
22. On 16 January 1991, plaintiff was examined by Dr. Rostand on behalf of the North Carolina Industrial Commission Advisory Medical Committee. On 6 February 1991, Dr. Rostand issued the committee report setting forth that plaintiff had pulmonary asbestosis — the disease characterized by interstitial pulmonary fibrosis — at both bases, as well as pleural calcification involving the left hemidiaphragm and anterior mediastinum; that plaintiff had a Class II (ten to 20 percent) respiratory impairment of the lungs which could not be apportioned between asbestosis, pleural plaques, and chronic obstructive pulmonary disease, but which rendered plaintiff incapable of work requiring more than light physical activity. Plaintiff also suffered from a complication of pulmonary asbestosis, gastro-intestinal malignancy. Continued medical surveillance was recommended, as well as restricting plaintiff from employment in areas that would expose him to asbestos or any other known respiratory hazard.
23. In March of 1991, plaintiff was hospitalized and treated for right anterior chest pains.
24. Plaintiff was first given notice that he had occupational asbestosis upon his receipt of Dr. Rostand's 6 February 1991 report on behalf of the North Carolina Industrial Commission Advisory Medical Committee. On 16 April 1991, plaintiff filed a claim with the North Carolina Industrial Commission for occupational asbestosis, within two years of being advised by competent medical authorities that he had this condition due to occupational exposure.
25. In late 1993 and early 1994, plaintiff was hospitalized and treated for severe pneumonia-like symptoms.
26. From 1988 until 1994 plaintiff had severe obstructive impairment of pulmonary function but only mild restrictive impairment of pulmonary function.
27. As a result of exposure to asbestos, plaintiff suffers from asbestosis, pleural plaques, and gastro-intestinal malignancy resulting in a resection operation for colon carcinoma in March, 1988. Plaintiff also has chronic obstructive pulmonary disease, with severe ventilatory impairment, to which plaintiff's smoking and workplace exposure to wood dust contributed, and arteriosclerotic cardiovascular disease.
28. Expert medical testimony elicited from Dr. Donohue verifies that plaintiff was injuriously exposed to asbestos, resulting in the physical conditions diagnosed by Dr. Rostand, throughout the period he performed the maintenance job described in Finding of Fact 8, which concluded on or about 31 January 1987. Immediately preceding 31 January 1987, plaintiff was exposed to the hazards of asbestosis for more than 30 working days, or parts thereof, within seven consecutive calendar months. Plaintiff was exposed to the hazards of asbestosis for a period of more than two years within ten years of his last exposure while employed at Plant #1. There is insufficient expert medical evidence to conclude that plaintiff was so exposed after 31 January 1987.
29. During the period of 1 December 1986 through 13 September 1987, plaintiff was employed by Singer Company and Affiliated Domestic Corporations, 8 Stamford Forum, Stamford, Ct., synonymous with "SSMC, Inc." (Singer Sewing Machine Company, Inc.), 8 Stamford Forum, Stamford, Ct.
30. Plant # 1 was purchased on 15 March 1973 by "The Singer Company, a New Jersey Corporation", which filed with the Social Security Administration as "Singer Co. and Affiliated Domestic Corporations," with a mailing address of 8 Stamford Forum, Stamford, Connecticut, and used Federal Employer ID Number 22-1285090 throughout the years 1973 through 1987 without change according to the Social Security Administration Document, Stipulated Exhibit 1, page 2. Plant Number 1 was sold on July 30, 1986 to "Singer Furniture Company, a Delaware Corporation", one of two "primary operating" divisions of SSMC, Inc. according to the contract between Constitution State Service Company and SSMC, Inc. for the provision of compensation claim handling in the period July 1, 1987 to July 1, 1988, which sets forth the address of SSMC, Inc. as 8 Stamford Forum, Stamford, Ct. 06904-2151 and which sets forth the contact persons for claims involving "Singer Furniture Company" in Lenoir, North Carolina. "Singer Furniture Company" sold Plant Number 1 to 620 College Associates, Inc. (an investment group), September 3, 1987. (See stipulations 9 10, with reservations.)
31. "SSMC, Inc." had a mailing address of 8 Stamford Forum, Stamford, Connecticut at the time of plaintiff's last injurious exposure to asbestosis on or about 31 January 1987.
32. The Social Security Earnings Record for the plaintiff, reflecting filings and taxes paid by his employers, state that the plaintiff was an employee of "The Singer Company", employer ID # 22-1285090, from April 1, 1973, through the end of calendar year 1987. While plaintiff's "W-2"s are not available, "W-2"s issued to Roland E. Clark, the claimant's supervisor during 1984 through 1987 are in evidence (as Plaintiff's Exhibit 1), and show his employer to be, in 1984: "The Singer Co., 8 Stamford Forum, Stamford, Ct., Singer Furniture Division, Lenoir, N.C."; in 1986: "Singer Furniture Company, Lenoir, N.C."; in 1987: "Singer Furniture Company, Lenoir, N.C."; and in 1988: "Singer Furniture Company, Lenoir, N.C."
33. The records of the Industrial Commission show that Plant #1 was owned by "Singer" from 1 January 1983 to 1 January, 1989; that the employees therein were insured by Northwestern National Ins. Co. from 1 January 1983 to 1 January 1986; and that National Union Fire Insurance Company insured the compensation risk of "The Singer Company" from 1 January 1986 until 1 January 1989. In its answers to interrogatories, National Union Fire Insurance Company admitted that it was on the risk until 30 June 1987.
34. Constitution State Service Company was the servicing agent for SSMC, Inc. from 1 July 1987 to 30 June 1988, and the only recorded servicing agent for "Singer Furniture Company", a division of "SSMC, Inc.", in the State of North Carolina for that period of time. Industrial Commission records showed that on August 20, 1992, Plant # 1 was owned by "Singer" from January 1, 1983 to January 1, 1989, during which time Northwestern National Ins. Co. was on the risk from 1 January 1983 to 1 January 1986, and National Union Fire Ins. Co. had the compensation liability from 1 January 1986 to 1 January 1989.
35. The "The Singer Company"; "The Singer Sewing Machine Company", a division of SSMC, Inc.; "The Singer Corporation"; "Singer Furniture," a division of "SSMC, Inc."; and "SSMC. Inc" — hereinafter, "the Singer defendant(s)" — to the extent, if any, that they were not a single corporate entity with respect to the plaintiff's employment, were joint employers of the plaintiff at the time of his last injurious exposure, and therefore are jointly and severally liable for compensation due him in respect to disability arising out of his employment from 15 March 1973 through March 14, 1990, specifically including the period 31 July 1986 to 31 January 1987.
36. Plaintiff's "last injurious exposure" to the hazards of asbestosis for as much as 30 working days occurred in the period 31 July 1986 to 31 January 1987, the period that National Union Fire Ins. Co. was the carrier for Plant #1 and "Singer".
37. Neither SSMC, Inc., its divisions or affiliates have ever qualified or been listed as a self-insured by the State of North Carolina.
38. Inasmuch as the only evidence of plaintiff's average weekly wages are Social Security records, and inasmuch as those Social Security records reveal that plaintiff earned $19,906.47 during calendar year 1986, but said earning records are not further broken down into quarterly periods, the fairest method of calculating plaintiff's average weekly wage is to take calendar year earnings and divide the same by 52 weeks. As a result, plaintiff's average weekly wage on 31 January 1987 was $382.82, rendering a compensation rate of $255.23 per week.
39. Findings as to additional compensation due as a result of occupational asbestosis pend a further hearing, together with findings as to liability for and compensable consequences of his chronic obstructive pulmonary disease (COPD), pleural plaques, gastro-intestinal cancer, arteriosclerotic cardiovascular disease and any debilitating condition which may have resulted from dust and other airborne irritants in plaintiff's workplaces.
40. There is insufficient evidence of record from which to prove by the greater weight that plaintiff was ever employed by defendant Singer Sewing Machine, Ltd., a subsidiary of Singer Co., N.V., or that this defendant has any liability to plaintiff.
 ***********
In accordance with the directives of the North Carolina Court of Appeals, and based upon the foregoing findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. From April 1, 1973 through the end of 1987, plaintiff was employed by the Singer defendant(s), being one or more entities doing business as "The Singer Company", "Singer Sewing Machine Company", "The Singer Furniture Company", "Singer Furniture, a division of SSMC, Inc.," and "SSMC, Inc." N.C. Gen. Stat. §§97-2(1); 97-51.
2. As a result of his employment with the Singer defendant(s), plaintiff was exposed to the hazards of asbestosis and contracted the occupational disease asbestosis. N.C. Gen. Stat. § 97-53(24).
3. During the period 30 June 1986 to 31 January 1987, while employed at Plant #1 with said Singer defendant(s), plaintiff was last injuriously exposed to the hazards of asbestosis, having been exposed for more than 30 working days, or parts thereof, within seven consecutive calendar months, and for a period of not less than two years, and no part of the two year period was more than ten years prior to his said last exposure to asbestos dust. N.C. Gen. Stat. §§ 97-57, 97-63.
4. National Union Fire Ins. Co. was the carrier for "SSMC, Inc." and the "Singer Furniture Company" from 30 June 1986 to 31 January 1987, the time when plaintiff was last injuriously exposed to the hazards of asbestos. N.C. Gen. Stat. § 97-57.
5. Plaintiff's claim for compensation as a result of occupational asbestosis was timely filed. N.C. Gen. Stat. §97-58.
6. Plaintiff's pertinent average weekly wage was $382.82, yielding a compensation rate of $255.23. N.C. Gen. Stat. §97-2(5).
7. As a result of contracting occupational asbestosis, plaintiff must be "ordered out of the dust", is therefore entitled to weekly compensation to be paid by National Union Fire Insurance Company for 104 weeks at the rate of $255.23 per week. N.C. Gen. Stat. § 97-61.5(b).
8. Plaintiff is entitled to payment by the Singer defendant(s), being "The Singer Company", "Singer Sewing Machine Company", "The Singer Furniture Company", "Singer Furniture, a division of SSMC, Inc.," and "SSMC, Inc.", jointly and severally, and National Union Fire Insurance Company, for medical compensation expenses incurred as a result of the occupational disease asbestosis. N.C. Gen. Stat. §§ 97-59, 97-2(21).
 ***********
In accordance with the directives of the North Carolina Court of Appeals and based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
Subject to modification as provided in N.C. Gen. Stat. §97-61.6, pursuant to N.C. Gen. Stat. § 97-61.5, IT IS ORDERED:
1. The employee having been found to suffer from asbestosis, he shall remove himself from any occupation which exposes him to the hazards of asbestosis, or forfeit the right to compensation for disablement resulting from such disease.
2. The Singer defendants, being "The Singer Company", "Singer Sewing Machine Company", "The Singer Furniture Company", "Singer Furniture, a division of SSMC, Inc.," and "SSMC, Inc.", jointly and severally, and the carrier National Union Fire Insurance Company, shall pay plaintiff compensation at the rate of $255.23 per week for a period of 104 weeks, subject to a reasonable attorney's fee hereinafter approved, in one lump sum, together with interest at the judgment rate from the date of hearing before the Deputy Commissioner, July 18, 1994.
3. Said defendants shall pay all medical compensation expenses incurred by plaintiff as a result of his contraction of occupational asbestosis and related conditions when the bills for same are submitted to the carrier and approved in accordance with the rules of the Commission.
4. In the plaintiff's next examination, the Industrial Commission's Advisory Medical Committee shall evaluate how much of plaintiff's disability is due to asbestosis and how much is due to his COPD, if possible; whether he was first totally disabled as a result of his COPD; and whether workplace exposures, COPD, or asbestosis, contributed to the development of plaintiff's pleural plaques, history of cancer, and/or cardiac condition.
5. A reasonable attorney's fee in the amount of 25 percent of the compensation herein awarded is hereby approved for plaintiff's counsel, and shall be paid directly to him.
6. The said defendants shall pay all costs, including expert witness fees in the amount of $160.00 to David Bolda; $360.00 to Dr. James F. Donohue; $320.00 to Dr. N. M. Lewis, Jr.; 224.95 to Bryant Court Reporting for preparation of Dr. Bolda's deposition; and, $3,961.83 for the reasonable expenses associated with the asbestos survey of Plant #1 and report prepared by Environmental Investigations, P.A., inasmuch as the same was authorized by Order of the hearing Deputy.
7. Defendant Singer Sewing Machine, Ltd., a subsidiary of Singer Co., N.V., is hereby DISMISSED as a party defendant in this action.
This ____ day of March, 1999.
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ RENEE C. RIGGSBEE COMMISSIONER